HOIT et al. v. AMERICAN BANTAM
CAR CO.
Civil Action No. 5423.

District Court, W. D. Pennsylvania.
Feb. 11, 1947.

Alex A. Garroway, of Pittsburgh, Pa. (Wick, Smith & Hodel, of Pittsburgh, Pa., of counsel), for plaintiffs.

John E. Laughlin, Jr., and Kenneth G. Jackson, both of Pittsburgh, Pa. (Thorp, Bostwick, Reed & Armstrong, of Pittsburgh, Pa., of counsel), for defendant.

McVICAR, District Judge.

This is a class action by the above-named plaintiffs against the American Bantam Car Company, a corporation, for specific performance of a plan of recapitalization adopted by the stockholders of the Car Company, injunctive relief necessary for specific performance and other and further relief as justice requires.

The American Bantam Car Company, defendant, filed a motion under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, for judgment in its favor on the ground that there is no genuine issue as to any material fact and that said Company is entitled to judgment as a matter of law. Some of the material facts (others are stated hereinafter) are as follows:

The plaintiffs, consisting (among others) of the partners named, doing business as Hoit, Rose and Troster, are stockholders of the American Bantam Car Company. On May 24, 1945, they were the record holders of 5,726 shares of Common Stock and 1,051 shares of Convertible Preference Stock of said Car Company. The defendant Car Company is a corporation of the Commonwealth of Pennsylvania. Francis R. Fenn has been president and a director of said company for more than five years.

On April 10, 1945, the Company, under its Articles of Incorporation, was authorized to issue:

"(a) 100,000 shares of Convertible Preference Stock, 6% Cumulative, $10 per share par value, redeemable at $14 per share, plus accrued and unpaid dividends. Each share was entitled to three votes at

meetings of shareholders and was convertible at the option of the holder into three shares of Common Stock.

"(b) 600,000 shares of Common Stock, no par value, each share of which was entitled to one vote at meetings of shareholders."

On April 10, 1945, there was issued and outstanding:

"(a) 83,547 shares of Convertible Preference Stock and 304,284 shares of Common Stock."

On the same date, 295,716 shares of Common Stock were reserved for conversion of Convertible Preference Stock.

In April, 1945, the Directors and Officers of the Company realized that it would be necessary for the Company to develop new peacetime products and that this would require a readjustment of the Company's capital structure and the procurement of new working capital. At this time the accumulated dividends on the preference stock amounted to $4.05 per share.

The Board of Directors, at their meeting of April 9 and 10, 1945, voted to recommend to its stockholders, amendments to the Articles of Incorporation, the adoption of a plan of recapitalization and called a special meeting of the Company's stockholders June 25, 1945, for the purpose of considering and voting upon said amendments and plan of recapitalization. The amendments to the Articles of Incorporation would authorize the issuance of 100,000 shares of prior preferred stock of par value of $10 per share. This stock would be preferred over the Convertible Preference Stock and the Common Stock, both as to dividends and assets, etc. The amendments would also change the Common Stock from no par value to a par value of $1 per share and would increase the number of shares from 600,000 to 1,-500,000 shares. The proposed amendments also provided that the Preference Stock would be changed and modified so as to conform to the above provisions as to the prior preferred stock and Common Stock set forth above.

The Plan of Recapitalization contemplated that the Car Company would register the new stock with the Securities and Exchange Commission. The resolution adopted by the Board of Directors as to the Plan of Recapitalization, is as follows:

"III. That the following Plan of Recapitalization of this corporation be submitted to the shareholders of this corporation at a special meeting of shareholders to be held on Monday, June 25, 1945:

"(1) Upon approval by the stockholders of the proposed amendments to the Articles of Incorporation, the Corporation shall offer to issue to each holder of Convertible Preference Stock in exchange for each share of Convertible Preference Stock of such holder and for all rights in respect thereof, upon surrender for cancellation of each such share of Convertible Preference Stock, the right to receive, if such holder so elects, either:

"Option A.

"Four and one-half (4½) shares of Common Stock of the Corporation having a par value of $1.00 per share, provided such election shall be exercised in favor of receiving such four and one-half (4½) shares of Common Stock not later than sixty (60) days after the Plan shall have become operative as hereinafter provided; or:

"Option B.

"Two (2) shares of the Common Stock of the Corporation having a par value of $1.00 per share and one (1) share of Prior Preferred Stock of the Corporation having a par value of $10.00 per share, the right of election to receive two (2) shares of Common Stock and one (1) share of Prior Preferred Stock being exercisable within any period fixed by the Board of Directors of the Corporation after the Plan shall have become operative as hereinafter provided.

"(2) The Board of Directors of The Company or the Executive Committee of the Board (if so determined by the Board) shall have the power to declare the Plan operative and in effect when the Plan has been adopted and approved by the legally required majority of each class of stock then outstanding and the certificate of amendment has been issued by the Department of State of the Commonwealth of Pennsylvania.

"(3) After the Plan has been approved and adopted by the stockholders, the Board of Directors or the Executive Committee, if authorized by the Board, may supply any defect or omission or reconcile any inconsistencies in the Plan in such manner and to such extent as may be necessary in the judgment of the Board or the Committee to carry out the Plan effectively and the Board and the Committee may abandon the Plan at any time. The Board or the Committee may construe the Plan any modification thereof and any construction thereof made or action thereunder taken by the Board or the Executive Committee shall be conclusive. After the Plan has been declared to be operative by the Board, it shall be fully authorized and empowered to act in such manner and to such extent with respect thereto as may be necessary in its judgment to carry out the Plan effectively.

"(4) The Company shall pay the expenses incident to the effectuating of the exchanges contemplated under the plan."

On April 23, 1945, notices of the special meeting of stockholders to be held June 25, 1945, were mailed to its stockholders, which contained, inter alia, the Plan of Recapitalization as adopted by the Board of Directors at its meeting April 9 and 10, 1945.

In pursuance to the aforesaid notice, at said meeting, the amendments to the said Company was held June 25, 1945, and Articles of Incorporation and the Plan of a special meeting of the stockholders of Recapitalization, as approved by the Board of Directors at its meeting April 9 and 10, 1945, were adopted.

The resolution adopted by the stockholders as to the Plan of Recapitalization is as follows:

"That the Plan of Recapitalization of American Bantam Car Company proposed by the Board of Directors of American Bantam Car Company at a special meeting thereof held on April 9 and 10, 1945 at the Ambassador Hotel, New York, N. Y., duly called and convened and at which a quorum was present, be and the same hereby is approved, and the directors and officers of this corporation be and they hereby are authorized and directed to take such action as shall be necessary to effectuate such Plan of Recapitalization, a copy of the Directors' resolution proposing such Plan of Recapitalization to be attached to and made a part of the minutes of this meeting."

Immediately following the special meeting of the stockholders, the Board of Directors, June 25, 1945, held a special meeting at which meeting the following resolution was adopted:

"Whereas, the Board of Directors of this Corporation duly, proposed, by resolution adopted at a special meeting thereof held at the Ambassador Hotel, New York City, on Monday and Tuesday, April 9 and 10, 1945, a certain Plan of Recapitalization, and

"Whereas, at a special meeting of the shareholders of this Corporation, duly called and convened and at which a quorum was present, held at 2:00 P. M. Eastern War Time on Monday, June 25, 1945, at the office of the Corporation in Butler, Pennsylvania, the aforesaid Plan of Recapitalization proposed by the Board of Directors of this Corporation was approved by the holders of the majority in amount of both the Common Stock and the Convertible Preference Stock of this Corporation respectively,

"Therefore be it resolved, that in accordance with Paragraph (2) of said Plan of Recapitalization, the twentieth day next following the date upon which a registration statement as required by the Securities Act of 1933 filed with the United States Securities and Exchange Commission with respect to the new securities issuable under such Plan of Recapitalization shall have become effective, is hereby designated as the date upon which the aforesaid Plan of Recapitalization of American Bantam Car Company shall become operative; and such Plan of Recapitalization shall upon such date without further action by this Board be and become operative."

On July 23, 1945, the Officers of the Company filed with the Secretary of the Commonwealth of Pennsylvania, the Articles of Amendment to the Articles of Incorporation, which were approved by the

Stockholders at the special meeting of June 25, 1945.

On October 18, 1945, the Registration Statement authorized by the Board of Directors at its meeting of June 25, 1945, was filed with the Securities and Exchange Commission. This Registration Statement did not become effective and no Registration Statement ever became effective with respect to the proposed exchanges of stock set forth in the Plan of Recapitalization.

On December 3, 1945, the Board of Directors resolved to abandon the Plan of Recapitalization adopted by the stockholders; the resolution of the Board being as follows:

"Resolved, that the Plan of Recapitalization approved by the stockholders at a special meeting held on June 25, 1945, be abandoned."

On December 5, 1945, notice was given by mail by the Company to each of its stockholders of the aforesaid abandonment of the Plan.

Plaintiffs contend that they are entitled to a judgment of specific performance of the Plan of Recapitalization adopted by the stockholders June 25, 1945, for several reasons; the first reason being that the stockholders did not authorize the Board of Directors to abandon the Plan.

The resolution adopted by the stockholders at its meeting June 25, 1945, adopted the resolution containing the Plan of Recapitalization approved by the Board of Directors at its meeting held on April 9 and 10, 1945. This resolution provided that the Board of Directors "may abandon the Plan at any time." This language being clear, it follows that the stockholders at its special meeting of June 25, 1945, conferred upon the Board of Directors, the authority to abandon the Plan of Recapitalization at any time.

The second reason of the plaintiffs is, that the Company cannot make operative part of the Plan approved by the stockholders and abandon the remainder.

Beginning September 7, 1945, the Company issued certificates for new $1 par value Common Stock on a share for share basis, in exchange for old certificates of the Company's Common Stock without par value and on the same date, the Company ceased to issue certificates for no par value Common Stock, and all certificates for Common Stock issued thereafter were $1 par value Common Stock.

After the Amendments to the Articles of Incorporation, the new Common Stock issued would properly be at the par value of $1 per share. If the exchange of no par value Common Stock for par value Common Stock was within the Plan, the Board of Directors had the right to abandon the Plan so far as it had not become effective under the authority conferred upon the Board of Directors to abandon the Plan at any time.

The third reason of the plaintiffs is that the action of the Board of Directors in abandoning the Plan of Recapitalization December 3, 1945, is void because "Director Mooney and the other Directors did not act in good faith in adopting the resolutions to abandon the portion of the Plan which was favorable to the Convertible Preference Stockholders."

Rule 9(b) of the Federal Rules of Civil Procedure provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

Plaintiffs, in their complaint, aver:

"James D. Mooney was elected as a Director of Car Company September 24, 1945, and on September 26, 1945, an option was given to him by Car Company whereby he could buy from it 50,000 shares of common stock of Car Company any time within two years thereafter at $4 per share. At that time the stock was selling on the market at $4 per share. * * * Plaintiffs aver, therefore, that James D. Mooney and the Directors of Car Company did not act in good faith in attempting to abandon the Plan of Recapitalization because said James D. Mooney would be greatly enriched by the increase in value of the common stock if and when he exercised his option to buy 50,000 shares."

Mooney, at the time he was elected a Director of the Company, was one of the Vice-Presidents and a director of General Motors Corporation and President of

General Motors Export Corporation. At the meeting at which he was elected a Director, the Directors voted him an option to buy 50,000 shares of the Company's Common Stock. The enrichment of Mooney by the abandonment of the Plan of Recapitalization did not make the action of the Board of Directors a fraud and, consequently, it did not make the action of the Board at its meeting December 3, 1945, void wherein it abandoned the aforesaid Plan of Recapitalization.

The plaintiffs' fourth reason is that the Company, by the actions of its President and authorized officer, estopped itself from abandoning the Plan and taking from its Convertible Preference Stockholders and others, any advantage they obtained in reliance upon those actions.

The acts of Estoppel are alleged acts of the President of the Company relating to delay in the plan becoming effective and particularly a letter of the President to the stockholders dated July 17, 1945. In this letter it is set forth, inter alia:

"At the special directors meeting immediately following the special stockholders meeting, the directors declared the plan operative twenty days after the date upon which the registration statement is filed with the United States Securities and Exchange Commission as required by the Securities Act of 1933 [15 U.S.C.A. § 77 et seq.].

"As matters stand today we expect to complete the closing of our books for the fiscal year 1945 approximately August 10th which should enable us to file our registration statement with the Securities and Exchange Commission within approximately twenty days of that date or September 1st. If no difficulties are encountered, therefore, we shall be in a position to make stock exchanges to those who desire to avail themselves of the plan on approximately September 30th."

The defendant Car Company was not estopped from abandoning the Plan of Recapitalization (as was done by its Board of Directors at its meeting of December 3, 1945), for several reasons. There was no contractual relation between the plaintiffs and the defendant by reason of the adoption by the stockholders of the Plan of Recapitalization with authority in the Board of Directors at any time, to abandon the same. There was no offer from the defendant Company to the plaintiffs. The President did not act within the scope of his authority when he stated that said Plan would be operative twenty days after the filing of the statement with the Securities and Exchange Commission. The plaintiffs are presumed to know the law that Plans of Recapitalization do not become effective until twenty days after approval by the Securities and Exchange Commission. The plaintiffs knew that the Plan of Recapitalization contemplated the Car Company would register the new stock with the Securities and Exchange Commission. The law of estoppel does not apply under the facts and the relationship of the parties as they exist in this case.

The Board of Directors at its meeting, April 9 and 10, 1945, approved the aforesaid amendments to its Articles of Incorporation, and Plan of Recapitalization, and provided for its submission to the stockholders at a special meeting to be held June 25, 1945. The stockholders, after due notice, approved the aforesaid action of the Board of Directors. The action of the stockholders conferred power upon the Board of Directors to abandon the Plan of Recapitalization at any time. The Board of Directors abandoned the Plan without fraud or estoppel December 3, 1945. It follows that judgment should be rendered forthwith for the defendant for the reason that the pleadings, admissions of fact as contained in the stipulation filed herewith, together with affidavits show that there is no genuine issue as to any material fact, and that the defendant, American Bantam Car Company, is entitled to judgment as a matter of law.